**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | | |
|---|---|---|
| PATRIOTIC VETERANS, INC. | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | Civil Action No. 1:10-cv-0723 WTL-TAB |
| v. | ) | |
| | ) | |
| STATE OF INDIANA<br>EX REL. GREG ZOELLER,<br>ATTORNEY GENERAL, and<br>GREG ZOELLER, Attorney General, | ) | |
| | ) | |
| Defendants. | ) | |

# PLAINTIFF PATRIOTIC VETERANS, INC.'S MOTION FOR SUMMARY JUDGMENT AND PERMANENT INJUNCTION

Plaintiff, Patriotic Veterans, Inc., in accordance with Federal Rule of Civil Procedure 56 and S. D. Ind. L. R. 56.1, moves the Court for summary judgment against Defendants State of Indiana and Greg Zoeller (collectively "State"). In support of its motion, Patriotic Veterans states:

1. Patriotic Veterans designates the following items, contained in the Court's Docket or the Appendix filed concurrently with this Motion, as evidence for summary judgment:

    1. Patriotic Veterans First Amended Complaint .................................. Docket 29
    2. Defendants' Answer to Amended Complaint .................................. Docket 31
    3. Declaration of Daniel Paul Caprio .......................................... Appendix Tab D
    4. Declaration of Victor Owens .................................................. Appendix Tab E
    5. Congressional Testimony of Steve Carter Before the House of Representatives Committee on House Administration ........................................................ F

2. This case concerns the Indiana Automatic Dialing Machine Statute ("ADMS") that, as interpreted and enforced by Defendants, makes it illegal for Plaintiff to make prerecorded, interstate telephone calls to citizens of the State of Indiana, including those that communicate a political message. The ADMS provides:

> 24-5-14-5. Conditions for using automatic dialing-announcing device – exceptions.
>
> (a) This section does not apply to messages:
>
> (1) From school districts to students, parents, or employees;
>
> (2) To subscribers with whom the caller has a current business or personal relationship; or
>
> (3) Advising employees of work schedules.
>
> (b) A caller may not use or connect to a telephone line an automatic dialing-announcing device unless:
>
> (1) The subscriber has knowingly or voluntarily requested, consented to, permitted, or authorized receipt of the message; or
>
> (2) The message is immediately preceded by a live operator who obtains the subscriber's consent before the message is delivered.

3. Patriotic Veterans, Inc. is a not-for profit Illinois corporation approved as a 501 (c) (4) organization by the IRS. The purpose of Patriotic Veterans is to inform voters of the positions taken by candidates and office holders on issues of interest to veterans. (Declaration of Daniel Paul Caprio, Ex. D at ¶ 2). Patriotic Veterans has used, and found effective, automatically dialed phone calls which deliver a political message related to a particular candidate or issue. If Indiana's law did not exist, Patriotic Veterans would place automated phone calls related to its mission to Indiana Veterans and voters. More specifically, Patriotic Veterans could and would have placed phone calls to Indiana Voters prior to the November

general election, but did not do so because of Indiana's ban on automated political phone calls. (Ex. D at ¶ 4).

4. Patriotic Veterans could not afford to place live-operator phone calls and still disseminate the same number of messages to the same number of voters. The cost of live operator calls is about eight (8) times more expensive using the vendor that Patriotic Veterans has used. Thus, for every one phone call Patriotic Veterans could afford to place with a live operator, it could place eight (8) using automated calls. Moreover, the feedback Patriotic Veterans receives is that the majority of the people who receive their messages either listen to the entire message, or the message is placed on an individual's answering machine. Thus, automated phone calls are effective in delivering the messages of Patriotic Veterans and appear to be of interest to the majority of those called. (Ex. D at ¶ 6).

5. If anyone places automated political calls to Indiana residents, the attorney general will seek fines and injunctive relief. (Answer at ¶ 22). Patriotic Veterans wishes to place automated calls to Indiana voters and veterans. (Ex. D at ¶¶ 3,4,6).

6. The Court should enter summary judgment invalidating the ADMS because it violates the First Amendment of the United States Constitution and is preempted by federal law.

7. The ADMS violates the First Amendment for several reasons. First, the ADMS is overbroad because it sweeps a substantial amount of protected political speech into its scope. It is undisputed that the ADMS applies to political speech and prevents automatic dialing machines from being used to convey political messages. This bar has a substantial impact given the frequency with which automated calls are made to deliver political messages. Jason C. Miller, *Regulating Robocalls: Are Automated Calls the Sound of, or a Threat to, Democracy?*16 MICH. TELECOMM. TECH. L. REV. 213, 217 (2009). Because of the chilling effect that can occur when statutes prohibit activities related to speech, the Supreme Court has allowed plaintiffs to

challenge state actions on free speech grounds by claiming that the government regulation is "overbroad." *Virginia v. Hicks*, 539 U.S. 113, 123 (2003).

8. Second, the ADMS fails strict scrutiny. In the "rough hierarchy" of forms of speech created by the Supreme Court, "[c]ore political speech occupies the highest, most protected position." *R.A.V. v. St. Paul*, 505 U.S. 377, 422 (1992) (Stevens, J., concurring in judgment). As to "'core political speech,'" First Amendment protection is "'at its zenith.'" *Meyer v. Grant*, 486 U.S. 414, 425 (1988). Just last term, the Supreme Court reiterated "the primary importance of speech itself to the integrity of the election process. As additional rules are created for regulating political speech, any speech arguably within their reach is chilled." *Citizens United v. Federal Election Comm'n*, 130 S.Ct. 876, 895 (2010). "For these reasons, political speech must prevail against laws that would suppress it, whether by design or inadvertence. Laws that burden political speech are 'subject to strict scrutiny,' which requires the Government to prove that the restriction 'furthers a compelling interest and is narrowly tailored to achieve that interest.'" *Id.* at 899 (quoting *Federal Election Comm'n v. Wisconsin Right to Life, Inc.*, 551 U.S. 449, 464 (2007)).

9. Third, even if the court concludes that the Automatic Dialer Statute is content neutral and does not burden protected political speech, it still must satisfy the test for time, place and manner restrictions and incidental burdens on speech. *See Ward v. Rock Against Racism*, 491 U.S. 781, 796 (1989); *Frisby v. Schultz*, 487 U.S. 474, 481 (1988); *United States v. O'Brien*, 391 U.S. 367 (1968). "Proper time, place, or manner restrictions must be narrowly tailored to serve a significant government interest unrelated to the suppression of free expression and leave open alternative channels for communication." *Pleasureland Museum, Inc. v. Beutter*, 288 F.3d 988, 1000 (7th Cir. 2002). The ADMS does not satisfy this standard because it does not serve a

significant government interest, is not narrowly tailored and does not leave open alternative channels of communication.

10. Finally, federal law preempts the ADMS. Since 1934, Congress has vested the FCC with exclusive authority over interstate calls and has denied this power to the states, which, with some exceptions, have exclusive authority over intrastate calls. Against this longstanding dichotomy between federal and State jurisdiction over communications, the Congress passed the TCPA, which expanded federal jurisdiction by granting the FCC authority over certain intrastate communications — authority that the FCC had previously lacked. To constrain the effect of this expansion of FCC authority over an area that previously had been the exclusive domain of the states, the TCPA contains a saving clause preserving the states' historical power to impose more stringent restrictions on intrastate marketing calls, up to and including prohibiting them.

11. In further support of its motion, Patriotic Veterans files concurrently herewith its Brief in Support of Motion for Summary Judgment and Permanent Injunction, its Appendix in Support of Motion for Summary Judgment and Permanent Injunction, and its proposed form of order which asks that summary judgment be entered.

WHEREFORE, Patriotic Veterans respectfully requests that the Court grant its Motion for Summary Judgment and Permanent Injunction, and that the Court award all other appropriate relief.

Respectfully submitted,

*s/Paul L. Jefferson*

Paul L. Jefferson
BARNES & THORNBURG LLP
11 South Meridian Street
Indianapolis, Indiana 46204
Telephone: (317) 236-1313
Facsimile: (317) 231-7433
Email: paul.jefferson@btlaw.com

Allison R. Hayward (*pro hac vice* pending)
Bradley A. Smith (*pro hac vice* pending)
Center for Competitive Politics
124 West Street South
Alexandria, VA 22314
Telephone: (703) 894-6800
Facsimile: 703.894.6811
Email: Ahayward@campaignfreedom.org

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on October 18, 2010, a copy of the foregoing was filed with the Court. Notice of this filing will be sent to the parties by operation of the Court's electronic filing system. Parties may access this filing through the Court's system.

/s/ Paul L. Jefferson
Paul L. Jefferson

INDS02 1135712v1