UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PATRIOTIC VETERANS, INC., ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | CAUSE NO.  1:10-cv-723-WTL-TAB |
| ) | |
| STATE OF INDIANA, ex rel. GREG ) | |
| ZOELLER, ATTORNEY GENERAL, et al., ) | |
| ) | |
| Defendants. ) | |

### ENTRY ON CROSS-MOTIONS FOR SUMMARY JUDGMENT AND ORDER GRANTING PERMANENT INJUNCTION

This cause is before the Court on the parties' cross- motions for summary judgment.  The motions are fully briefed and the Court, being duly advised, **GRANTS** the Plaintiff's motion and **DENIES** the Defendants' motion for the reasons set forth below.  In light of this ruling, the Court also **GRANTS** the Plaintiff's request for a permanent injunction.

### I.  RELEVANT FACTS

Plaintiff Patriotic Veterans, Inc., is an Illinois non-profit corporation that exists for the purpose of informing voters of the positions taken by candidates and office holders on issues of interest to veterans.  In furtherance of its mission, the Plaintiff wishes to place automated interstate telephone calls to Indiana residents to communicate political messages relating to particular candidates or issues.  However, doing so would violate Indiana's Automated Dialing Machine Statute ("IADMS"), Ind. Code 24-5-14-1, *et seq.*, which provides, in relevant part:

    (a)    This section does not apply to messages:

        (1)    from school districts to students, parents, or employees;

        (2)    to subscribers with whom the caller has a current business or personal relationship; or

        (3)    advising employees of work schedules.

  (b)    A caller may not use or connect to a telephone line an automatic dialing-announcing device unless:

        (1)    The subscriber has knowingly or voluntarily requested, consented to, permitted, or authorized receipt of the message; or

        (2)    The message is immediately preceded by a live operator who obtains the subscriber's consent before the message is delivered.

Ind. Code 24-5-14-5(b). If the IADMS did not exist, the Plaintiff "would place automated phone calls related to its mission to Indiana Veterans and voters." Indiana Attorney General Greg Zoeller has declined to exempt political calls from enforcement under the IADMS[1] and would seek fines and injunctive relief against the Plaintiff if it placed automated political calls to Indiana residents. Indeed, violation of the IADMS constitutes a Class C misdemeanor. Ind. Code 24-5-14-10.[2]

## II. DISCUSSION

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is

---

[1] When applying another Indiana statute, the Telephone Privacy Act, a previous Indiana Attorney General recognized "an 'implicit exclusion' for calls soliciting political contributions." *See National Coalition of Prayer, Inc. v. Carter*, 455 F.3d 783, 784 (7th Cir. 2006). Attorney General Zoeller recognizes no such exclusion with regard to the IADMS and has expressly reminded Indiana's political parties that the statute does not exempt political calls and that he intends to actively enforce the statute's provisions.

[2] The Court finds that with these uncontraverted facts the Plaintiff has demonstrated the existence of a justiciable controversy by demonstrating that it "has 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder.'" *Schirmer v. Nagode* 621 F.3d 581, 586 (7th Cir. 2010) (quoting *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979)).

entitled to judgment as a matter of law." In this case, the parties agree that none of the relevant facts are in dispute; rather, the resolution of this case hinges solely on issues of law. Specifically, the Plaintiff alleges that the IADMS is unenforceable, at least as applied to political messages, because it violates the First Amendment. The Plaintiff also alleges that the IADMS is preempted by the Federal Telephone Consumer Protection Act, 47 U.S.C. § 227 ("TCPA"). Because "federal courts are supposed to explore all non-constitutional grounds of decision first, to ensure against unnecessary constitutional adjudication," *Ameritech Corp. v. McCann*, 403 F.3d 908, 911 (7th Cir. 2005) (citing *Jean v. Nelson*, 472 U.S. 846, 854 (1985), and *Horn Farms, Inc. v. Johanns*, 397 F.3d 472, 477 (7th Cir. 2005)), the Court will consider the parties' preemption arguments first.[3]

## A. TCPA Preemption

When determining whether a state statute is preempted by federal law, the Court's task is to determine whether Congress intended for federal law to be preemptive in the circumstances at issue. *Indiana Bell Telephone Co.,Inc. v. Indiana Utility Regulatory Com'n,* 359 F.3d 493, 497 (7th Cir. 2004) ("Congressional intent 'is the ultimate touchstone' of pre-emption analysis.") (quoting *Cipollone v. Liggett Group, Inc.*, 505 U.S. 504, 516 (1992)). "Congress's intent may be explicit or it may be implicit in the statute's structure and purpose." *Id.* (citing *Gade v. National Solid Wastes Mgmt. Ass'n*, 505 U.S. 88 (1992)). Courts that have tried to discern Congressional intent with regard to the preemptive effect of the TCPA have reached different results. *Compare*

---

[3] Preemption is, of course, "basically constitutional in nature, deriving its force from the operation of the Supremacy Clause." *Douglas v. Seacoast Products, Inc.*, 431 U.S. 265, 271 (1977). However, "it is treated as 'statutory' for purposes of our practice of deciding statutory claims first to avoid unnecessary constitutional adjudications." *Id.*

*Klein v. Vision Lab Telecomm., Inc.,* 399 F. Supp.2d 528 (S.D.N.Y. 2005), and *Gottlieb v. Carnival Corp.*, 367 F. Supp.2d 301 (E.D.N.Y. 2005), rev'd on other grounds, 436 F.3d 335 (2nd Cir. 2006) (each finding preemption), *with Van Bergen v. Minnesota*, 59 F.3d 1541 (8th Cir. 1995), and *Palmer v. Sprint Nextel Corp.* 674 F. Supp.2d 1224 (W.D. Wash. 2009) (each finding no preemption). For the reasons set forth below, this Court finds that the TCPA does preempt the IADMS as it applies to the activities in which the Plaintiff wishes to engage.

The TCPA does not contain an express preemption clause. Rather, it contains a savings clause that provides, in relevant part:

> [N]othing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits . . .
>
>   (B) the use of automatic telephone dialing systems.[4]

47 U.S.C.A. § 227(f)(1). By defining in this way a universe of state laws that are *not* preempted, this provision, by implication, suggests that Congress intended for state laws outside of that defined universe to be preempted. This suggestion finds support in the legislative history of the TCPA. The Senate Report discussing the need for the legislation included the following statement:

> [O]ver 40 States have enacted legislation limiting the use of ADRMPs [automatic dialer recorded message players] or otherwise restricting unsolicited telemarketing. These measures have had limited effect, however, because States do not have jurisdiction over interstate calls. Many States have expressed a desire for Federal legislation to regulate interstate telemarketing calls to supplement their restrictions on intrastate calls.

S. Rep. No. 102-178 (1991); *see also id.* ("Federal action is necessary because States do not have

---

[4]The TCPA applies to practices other than the use of automatic telephone dialing systems, but that is the only practice at issue in this case.

the jurisdiction to protect their citizens against those who use these machines to place interstate telephone calls."). Further, in enacting the TCPA, Congress made the following finding: "Over half the States now have statutes restricting various uses of the telephone for marketing, but telemarketers can evade their prohibitions through interstate operations; therefore, Federal law is needed to control residential telemarketing practices." PL 102–243 § 2(7), 105 Stat. 2394 (1991). Even more direct is the following comment by Senator Hollings, co-sponsor of the TCPA:

> Section 227(e)(1) clarifies that the bill is not intended to preempt State authority regarding intrastate communications except with respect to the technical standards under section 227(d) and subject to section 227(e)(2). Pursuant to the general preemptive effect of the Communications Act of 1934, State regulation of interstate communications, including interstate communications initiated for telemarketing purposes, is preempted.

137 Cong. Rec. S18781-02, S18784. As "a sponsor's statement to the full Senate," this statement "carries considerable weight" in determining whether Congress intended the TCPA to have preemptive effect with regard to interstate regulation. *See Corley v. United States*, 556 U.S. 303, 129 S. Ct. 1558, 1569.

The language of the savings clause coupled with the consistent legislative history leads the Court to determine that the TCPA was enacted with the purpose of establishing exclusive regulations relating to the interstate use of automatic telephone dialing systems, as well as establishing regulations that would apply to their intrastate use unless a particular state chose to enact (or already had enacted) more stringent regulations. To read the TCPA otherwise would render the word "intrastate" within the savings clause entirely meaningless and thus be inconsistent with the "cardinal principle of statutory construction that we must give effect, if possible, to every clause and word of a statute." *Williams v. Taylor*, 529 U.S. 362, 404 (2000).

If Congress intended for the TCPA to have no preemptive effect, it would not have included the word "intrastate" in the savings clause; the fact that it did indicates that it intended for state laws relating to the interstate use of automatic telephone dialing systems–or at least a portion of those laws, as discussed below–to be preempted, while more restrictive intrastate laws would be enforceable.

### B. Application of the TCPA's Savings Clause to the IADMS

Having determined that the TCPA does have preemptive effect, the Court now must determine whether the TCPA preempts the IADMS as it applies to the activities in which the Plaintiff wishes to engage. The Defendants argue that the TCPA's savings clause operates to save the IADMS from any preemptive effect the TCPA might have. The Court disagrees.

As noted above, the savings clause reads as follows:

> [N]othing in this section or in the regulations prescribed under this section shall preempt any State law that imposes more restrictive intrastate requirements or regulations on, or which prohibits . . .
>
> > (B) the use of automatic telephone dialing systems.

47 U.S.C.A. § 227(f)(1). If one were to diagram this sentence and read it literally, the savings clause would apply to (1) any state law that imposes more restrictive *intrastate* requirements or regulations on the use of automatic telephone dialing systems; (2) any state law that prohibits the *intrastate* use of automatic telephone dialing systems; and (3) any state law that prohibits the *interstate* use of automatic telephone dialing systems. It would not apply to any state law that imposes more restrictive *interstate* requirements or regulations on the use of automatic telephone dialing systems; in other words, it would protect a state's ability to prohibit conduct altogether but not its ability to place restrictions on it. This result is certainly perplexing, and "[w]here the

6

literal reading of a statutory term would 'compel an odd result,' we must search for other evidence of congressional intent to lend the term its proper scope." *Public Citizen v. U.S. Dept. of Justice*, 491 U.S. 440, 454 (1989) (citations and internal quotation marks omitted). "The circumstances of the enactment of particular legislation, for example, may persuade a court that Congress did not intend words of common meaning to have their literal effect." *Id.* (citations and internal quotation marks omitted).

In this case, given the awkward grammatical structure of the sentence and the legislative history discussed above, the Court does not believe that the literal reading of the statute is what Congress intended. Rather, Congress intended to distinguish between state laws applying to the interstate use of automatic telephone dialing systems, which are preempted, and state laws applying to the intrastate use of automatic telephone dialing systems, which pursuant to the savings clause are not preempted as long as they are more restrictive than the TCPA.

However, even if the savings clause is read in the strictly literal sense, it does not operate to save the IADMS as it applies to the Plaintiff. The IADMS does not *prohibit* the use of automatic telephone dialing systems; rather, it provides that automatic telephone dialing systems may be not used unless certain requirements are met or certain exceptions apply. In other words, the IADMS *regulates* the use of automatic telephone dialing systems. Even if read literally, the savings clause would not apply to the regulation of the interstate use of automatic telephone dialing systems; rather, it would operate only to save state laws that prohibit their interstate use. Accordingly, the IADMS is preempted by the TCPA with regard to the activities in which the

Plaintiff seeks to engage.[5]

### III. CONCLUSION

For the reasons set forth above, the Court determines that the IADMS is preempted by the TCPA as it applies to the interstate use of automatic telephone dialing systems. Accordingly, the Court **GRANTS** the Plaintiff's request for an injunction against enforcement of the IADMS with regard to interstate calls made to express political messages.[6] *See* Complaint at 8 (asking Court to "enter a permanent injunction enjoining the Defendants and their agents from taking any action under or to enforce or implement the ADMS with respect to political calls and interstate communications"). Defendant Greg Zoeller, in his official capacity as Attorney General of the State of Indiana, is hereby **ENJOINED** from enforcing the IADMS, Indiana Code 24-5-14-1, *et seq.,* with respect to any interstate telephone call made to express a political message.

SO ORDERED:   09/27/2011

*William T. Lawrence*

Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

---

[5]Because the Court finds in favor of the Plaintiff on the preemption issue, it is neither necessary nor appropriate for the Court to address the parties' First Amendment arguments.

[6]While the Court's ruling could support an injunction that was not limited to political messages, the Court declines to enter an injunction broader than that sought by the Plaintiff.

8

Copies to all counsel of record via electronic notification