UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| PATRIOTIC VETERANS, INC., )<br>  )<br>   Plaintiff, )<br>  )<br>   vs. )<br>  )<br>STATE OF INDIANA, et al., )<br>  )<br>   Defendants. ) | Cause No. 1:10-cv-723-WTL-MPB |

**ENTRY ON MOTIONS FOR SUMMARY JUDGMENT**

This cause is before the Court on the parties' cross–motions for summary judgment (Dkt. Nos. 32, 35). The motions are fully briefed and the Court, being duly advised, **DENIES** the Plaintiff's motion and **GRANTS** the Defendants' motion for the reasons set forth below.

## I.   BACKGROUND

Plaintiff Patriotic Veterans, Inc., is an Illinois non-profit corporation that exists for the purpose of informing voters of the positions taken by candidates and office holders on issues of interest to veterans. In furtherance of its mission, the Plaintiff wishes to place automated interstate telephone calls to Indiana residents to communicate political messages relating to particular candidates or issues. However, doing so would violate Indiana's Automated Dialing Machine Statute ("IADMS"), Ind. Code § 24–5–14–1 et seq., which bans autodialed calls with the following limited exceptions:

> (a) This section does not apply to any of the following messages:
>
> (1) Messages from school districts to students, parents, or employees.
> (2) Messages to subscribers with whom the caller has a current business or personal relationship.
> (3) Messages advising employees of work schedules.

      (b) A caller may not use or connect to a telephone line an automatic dialing-announcing device unless:

      (1) the subscriber has knowingly or voluntarily requested, consented to, permitted, or authorized receipt of the message; or
      (2) the message is immediately preceded by a live operator who obtains the subscriber's consent before the message is delivered.[1]

Ind. Code § 24–5–14–5. If the IADMS did not exist, the Plaintiff has indicated that it would place automated phone calls related to its mission to Indiana Veterans and voters. Indiana Attorney General Greg Zoeller has declined to exempt political calls from enforcement under the IADMS[2] and would seek fines and injunctive relief against the Plaintiff if it placed automated political calls to Indiana residents. Indeed, violation of the IADMS constitutes a Class C misdemeanor. Ind. Code § 24–5–14–10.

In an earlier ruling, the Court held that the Telephone Consumer Protection Act preempted the IADMS. *Patriotic Veterans, Inc. v. Indiana*, 821 F. Supp. 2d 1074 (S.D. Ind. 2011). The Seventh Circuit reversed the Court's ruling on preemption and remanded the case for the Court to evaluate "whether Indiana's statute violates the free speech rights protected by the First Amendment to the United States Constitution." *Patriotic Veterans, Inc. v. Indiana*, 736 F.3d 1041, 1054 (7th Cir. 2013).

---

[1] The statute was amended in 2015, but the changes in form do not affect the content of the statute or the Court's analysis.

[2] When applying another Indiana statute, the Telephone Privacy Act, a previous Indiana Attorney General recognized "an 'implicit exclusion' for calls soliciting political contributions." *See National Coalition of Prayer, Inc. v. Carter*, 455 F.3d 783, 784 (7th Cir. 2006). Attorney General Zoeller recognizes no such exclusion with regard to the IADMS and has expressly reminded Indiana's political parties that the statute does not exempt political calls. He also has stated that he intends to actively enforce the statute's provisions.

## II.     DISCUSSION

Federal Rule of Civil Procedure 56(a) provides that summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." In this case, the parties agree that none of the relevant facts are in dispute; rather, the resolution of this case hinges solely on issues of law.

### A.     Overbreadth

The Plaintiff first argues that the IADMS is overbroad. Specifically, the Plaintiff argues that the IADMS "sweeps into its scope protected political speech, including speech listeners wish to receive." Dkt. No. 33 at 14.  To support a claim of overbreadth, the party before the court must identify a significant difference between its claim that the statute is invalid on overbreadth grounds and its claim that it is unconstitutional as applied to its particular activity. *See Members of City Counsel of City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 802 (1984). Here, the Plaintiff's overbreadth challenge rests on the IADMS' application to political messages. The Plaintiff separately challenges the IADMS' application to its own political messages. Nothing in the record indicates that the IADMS will have any different impact on third parties' interests in free speech than it has on the Plaintiff's interests. *See id.* Thus, the Court will limit its review of the IADMS to the case before it and analyze it as applied to the Plaintiff.

### B.     Content Neutrality

The First Amendment prohibits the enactment of law "abridging the freedom of speech." U.S. Const. I. A government "has no power to restrict expression because of its message, its ideas, its subject matter, or its content." *Police Dept. of City of Chicago v. Mosley*, 408 U.S. 92, 95 (1972). "Government regulation of speech is content based if a law applies to particular speech because of the topic discussed or the idea or message expressed." *Reed v. Town of*

3

*Gilbert, Ariz.*, 135 S. Ct. 2218, 2227 (2015). Content-based speech restrictions are subject to strict scrutiny, *id.*, while content-neutral laws are to be narrowly tailored to serve a significant governmental interest and leave open ample alternative channels for communication, *Ward v. Rock Against Racism*, 491 U.S. 781, 791 (1989). A court must "consider whether a regulation of speech 'on its face' draws distinctions based on the message a speaker conveys." *Reed*, 135 S. Ct. at 2227 (quoting *Sorrell v. IMS Health, Inc.* 131 S. Ct. 2653, 2664 (2011)). Distinctions based on message may define regulated speech by particular subject matter or may define regulated speech by its function or purpose. *Reed*, 135 S. Ct. at 2227.

The Supreme Court has recognized an additional category of laws that, while "facially content neutral, will be considered content-based regulations of speech: laws that cannot be 'justified without reference to the content of the regulated speech,' or that were adopted by the government 'because of disagreement with the message [the speech] conveys.'" *Id.* (quoting *Ward*, 491 U.S. at 791).

The IADMS defines "caller" broadly as "an individual, corporation, limited liability company, partnership, unincorporated association, or the entity that attempts to contact, or contacts, a subscriber in Indiana by using a telephone or telephone line." Ind. Code § 24-5-14-2. The central provision of the statute restricts the caller from using an automatic dialing-announcing device ("ADAD") or connecting an ADAD to a telephone line unless the subscriber has consented to the receipt of the message or the message is preceded by a live operator who obtained the subscriber's consent. As noted above, the provision applies to all messages with three exceptions: (1) messages from school districts to students, parents, or employees; (2) messages to subscribers with whom the caller has a current business or personal relationship; and (3) messages advising employees of work schedules. Ind. Code § 24-5-14-5.

As the Seventh Circuit recognized, these limited exceptions are based on the recipient's implied consent:

> Indiana's statute . . . does appear to be a prohibition – it prohibits automatic dialing devices unless consent is first obtained. There are indeed other enumerated exemptions to the statute, but each describes a form of implied consent: Autodialers may be used to make calls "(1) from school districts to students, parents, or employees; (2) to subscribers with whom the caller has a current business or personal relationship; or (3) advising employees of work schedules." Ind.Code § 24–5–14–5. By accepting a job, an employee impliedly consents to phone calls from his employer for work related scheduling purposes, as do families who enroll children at school or people who enter into business relationships.

*Patriotic Veterans*, 736 F.3d at 1047. As such, these exceptions are based on the relationship of the speaker and recipient of the message rather than the content of the message.

On its face, the IADMS does not draw a distinction based on the content of speech, the topic discussed, or any message expressed. It does not protect specific categories of speech while prohibiting others; rather, its exceptions are based on implied consent due to the prior relationship between the parties, not the content of the caller's message. Thus, the IADMS is content neutral on its face.

In the second step of the *Reed* analysis, a facially content-neutral law can still be categorized as content based if it "cannot be 'justified without reference to the content of the regulated speech'" or if it was "adopted by the government 'because of disagreement with the message the speech conveys.'" 135 S. Ct. at 2227 (brackets omitted) (quoting *Ward*, 491 U.S. at 791). The Defendants' stated justification for the IADMS – their interest in protecting residential privacy from unsolicited, harassing telephone calls – does not require reference to the content or message. Therefore, the IADMS is content neutral.

This finding is consistent with decisions from other circuits. In *Van Bergen v. Minnesota*, 59 F.3d 1541 (8th Cir. 1995), the Eighth Circuit examined a statute similar to the IADMS.[3] The court found that the Minnesota statute regulating the use of telephone ADADs was content neutral because it limited the time and manner, not the content, of the communications. Likewise, in *Bland v. Fessler*, 88 F.3d 729 (9th Cir. 1996), the Ninth Circuit found that California statutes that regulated the use of ADADs were content neutral. The Plaintiff argues that the Court's decision should be guided by the Fourth Circuit's decision in *Cahaly v. LaRosa*, 796 F.3d 399 (4th Cir. 2015), where the court found the anti-robocall statute did not survive a strict scrutiny analysis. However, the statute at issue in that case prohibited only those robocalls that were "for the purpose of making an unsolicited consumer telephone call" or were "of a political nature including, but not limited to, calls relating to political campaigns." S.C. Code Ann. § 16-17-446(A). Based on the express language of the statute, the Fourth Circuit found that it was content based; the statute made facial content distinctions and thus was subject to strict scrutiny. *Cahaly*, 796 F.3d at 405. By contrast, the IADMS does not target political speech or any other type of speech.

The Plaintiff argues that the IADMS burdens political speech and therefore requires the Court to apply a strict scrutiny analysis.[4] However, the Supreme Court has analyzed content-neutral laws that impact political communications using the time, place, and manner scheme

---

[3] The Minnesota statute restricted the use of ADADs to situations in which the subscriber had consented to receipt of the message or the ADAD message was preceded by a live operator who obtained consent to the playing of the message, with three exceptions: (1) messages to subscribers with whom the caller had a current business or social relationship; (2) messages from schools to parents, students, or employees; and (3) messages to employees advising them of work schedules. *Van Bergen*, 59 F.3d at 1550.

[4] The Plaintiff also alleges that the IADMS has been enforced so as to target political calls, but the Plaintiff points to no evidence that supports this argument.

applied to other content-neutral laws. *See, e.g.*, *Members of the City Council of Los Angeles*, 466 U.S. at 803-05 (holding that a law prohibiting signs on public property in order to preserve aesthetics could be applied to political-campaign signs).

The Plaintiff attempts to analogize the present case to cases in which the statutes at issue specifically targeted political speech. However, any comparison to the statutes at issue in those cases is inapposite because the IADMS does not target political speech. For example, the Plaintiff cites to *Meyer v. Grant*, 486 U.S. 414 (1988), but that case dealt with a statute that specifically prohibited the use of paid petition circulators to gather signatures to have a proposed state constitutional amendment placed on the general election ballot.[5] Likewise, any reliance on *Citizens United v. Federal Election Commission*, 558 U.S. 310 (2010), is misplaced. There, the Court held that the statute at issue suppressed political speech on the basis of the speaker's corporate identity. By contrast, the IADMS does not govern specific subject matter, s*ee Reed*, 135 S. Ct. at 2230 (citation omitted), and any burden to political speech is incidental.[6]

### C. Time, Place, or Manner Restriction

Because the IADMS is content-neutral, it must be analyzed under the standards applicable to restrictions on the time, place, or manner of engaging in free speech. *See Ward*, 491 U.S. at 791. Accordingly, the IADMS does not run afoul of the First Amendment so long as it is

---

[5] The Court in *Meyer*, 486 U.S. 414, did not specifically address whether the statute was content based. It clearly was. However, in *Reed*, 135 S. Ct. 2218, the Court first examined whether the law was content based, finding that it was because it targeted specific subject matter for differential treatment. *See id.* at 2230-31. Only after making that finding did the Court apply strict scrutiny.

[6] The Plaintiff argues that language from the Seventh Circuit's opinion in *National Coalition of Prayer, Inc. v. Carter*, 455 F.3d 783 (7th Cir. 2006), dictates a ruling in its favor. However, in that case the majority was applying the balancing test established in *Rowan v. United States Postal Service*, 397 U.S. 728 (1970), a test that clearly is not applicable in this case.

"narrowly tailored to serve a significant governmental interest" and "leave[s] open ample alternative channels for communication of [ ] information." *McCullen v. Coakley*, 134 S. Ct. 2518, 2529 (2014) (quoting *Ward*, 491 U.S. at 791).

### 1. Significant Governmental Interest

Residential privacy is a significant governmental interest. "The [s]tate's interest in protecting the well-being, tranquility, and privacy of the home is certainly of the highest order in a free and civilized society." *Frisby v. Schultz*, 487 U.S. 474, 484 (1988) (quoting *Carey v. Brown*, 447 U.S. 455, 471 (1980)). Moreover, an "important aspect of residential privacy is the protection of the unwilling listener." *Frisby*, 487 U.S. at 484. As such, the state's interest is particularly strong where it is protecting its citizens from speech that holds the listener captive in his or her own home. *See id.* at 484–85. The use of an ADAD telephone call to deliver speech implicates this interest. *See also Nat'l Coal. of Prayer*, 455 F.3d at 790 ("[T]he Supreme Court has already made clear that citizens in their own homes have a stronger interest in being free from unwanted communication than a speaker has in speaking in a manner that invades residential privacy.").

Further, ADAD calls are especially disruptive because the recipient can interact only with the computer. If a call is made by a live operator, the call recipient can inform the operator that he does not wish to hear from the caller again. A Senate Report on the use of automated equipment to engage in telemarketing found as follows:

> [I]t is clear that automated telephone calls that deliver an artificial or prerecorded voice message are more of a nuisance and a greater invasion of privacy than calls placed by "live" persons. These automated calls cannot interact with the customer except in preprogrammed ways, do not allow the caller to feel the frustration of the called party, fill an answering machine tape or a voice recording service, and do not disconnect the line even after the customer hangs up the telephone. For all these reasons, it is legitimate

> and consistent with the constitution to impose greater restrictions on automated calls than on calls placed by "live" persons.

S. Rep. No. 102-178, at 4-5, as reprinted in 1991 U.S.C.C.A.N. 1968, 1972.

While the Plaintiff characterizes the interest as "the minor annoyance of having to answer the phone," Dkt. No. 33 at 26, the promotional materials and website of the company the Plaintiff has used to make the calls speak of the ability of a "ringing telephone . . . to stop[] people and demand[] attention." Dkt. No. 36-4 at 80. The Plaintiff indicates that at least 20 to 30 percent of calls are heard in their entirety and surmises that the recipients are therefore willing listeners. As the Defendants point out, the recipients may simply be listening to the entire call to try to register their objection to the calls or in the hope of being able to opt out of future calls. The Plaintiff also indicates that 25 to 35 percent of calls go to an answering machine and theorizes that those calls presumably bother no one. This supposition ignores the possibility that an answering machine could be filled by such messages.

Because ADAD calls intrude on the privacy and tranquility of the home and the recipient does not have the opportunity to indicate the desire to not receive such calls to a live operator, the government has a substantial interest in limiting the use of unsolicited, unconsented-to ADAD calls.

### 2. Narrowly Tailored

The IADMS is narrowly tailored to reach the Government's interests. To satisfy this standard, a regulation need not be the least speech-restrictive means of advancing the Government's interests. "Rather, the requirement of narrow tailoring is satisfied 'so long as the . . . regulation promotes a substantial government interest that would be achieved less effectively absent the regulation.'" *Ward*, 491 U.S. at 799 (quoting *United States v. Albertini*, 472 U.S. 675, 689 (1985)). Narrow tailoring in this context requires, in other words, that the means chosen do

9

not "burden substantially more speech than is necessary to further the government's legitimate interests." *Ward*, 491 U.S. at 799.

The Plaintiff argues that using a live operator would be prohibitively expensive; however, a live operator initiating the calls would be more efficient than a live operator making and delivering the entire message. An operator could announce the source of the call and determine if the listener wanted to hear the message and immediately move on to the next call after hearing the response. Use of a live operator also would allow recipients the chance to not only decline to listen to the message at that time but also to request that the caller not call again. As such, recipients could reduce the number of such calls that they receive.

The limits on the use of ADAD calls are designed to remedy the problems perceived with the use of ADAD technology. Further, although the use of ADADs is limited, the live operator and prior consent options allow the continued use of ADADs while protecting the interests of the recipient. The Plaintiff points to less restrictive means of regulation, but, under *Ward*, the mere existence of alternatives is not dispositive. *Ward*, 491 U.S. at 798–99 (A regulation of the time, place, or manner of protected speech must be narrowly tailored but "need not be the least restrictive or least intrusive means of doing so."). Of course, there must be a "close fit" between ends and means, *McCullen*, 134 S. Ct. at 2534, and such a fit exists here. Further, the IADMS does not "foreclose an entire medium of expression," *see City of Ladue v. Gilleo*, 512 U.S. 43, 56 (1994); rather, it prohibits a single method of communication: autodialed, prerecorded calls to people who have not consented to receive those calls. Thus, it is narrowly tailored.

### 3. Alternative Channels of Communication

Finally, the IADMS leaves open ample alternative channels for communication. "[E]ven regulations that do not foreclose an entire medium of expression, but merely shift the time, place,

or manner of its use, must 'leave open ample alternative channels for communication.'" *City of Ladue*, 512 U.S. at 56 (quoting *Clark v. Community for Creative Non-Violence*, 468 U.S. 288, 293 (1984)). "We recognize that 'an adequate alternative does not have to be the speaker's first or best choice, or one that provides the same audience or impact for the speech.'" *Weinberg v. City of Chicago*, 310 F.3d 1029, 1042 (7th Cir. 2002) (quoting *Gresham v. Peterson,* 225 F.3d 899, 906 (7th Cir. 2000)).

Contrary to the Plaintiff's claim, the IADMS does not "eliminate[] their ability to have a voice in the marketplace of ideas when elections, votes, or other dialogue of political importance occurs." Dkt. No. 33 at 11. The Plaintiff has pointed to evidence that the cost of live operator calls is about eight times more expensive using the vendor that the Plaintiff has used and that calls cannot always be made fast enough for the messages to be delivered in the time allotted. However, as the Defendants note, the Plaintiff has ample other means with which to deliver its message, including live telephone calls, consented to robocalls, radio and television advertising and interviews, debates, door-to-door visits, mailings, flyers, posters, billboards, bumper stickers, e-mail, blogs, internet advertisements, Twitter feeds, YouTube videos, and Facebook postings. The Plaintiff is not entitled to its first or best choice or even one that provides the same audience. Ample alternative channels of communication remain open to the Plaintiff, and thus this prong of the test is satisfied.

### III.    CONCLUSION

The IADMS is content neutral and is a valid time, place, or manner restriction on speech, and, accordingly, it does not violate the First Amendment. Therefore, the Court **DENIES** the Plaintiff's motion for summary judgment and **GRANTS** the Defendants' motion for summary judgment.

SO ORDERED: 4/7/16        _William T. Lawrence_

                                          Hon. William T. Lawrence, Judge
                                          United States District Court
                                          Southern District of Indiana

Copies to all counsel of record via electronic communication.